SHELL EASTERN PETROLEUM PRODUCTS, INC., A. V. BERNER & CO., PETROLEUM BY-PRODUCTS CO., SHELL UNION OIL CORP. *v.* UNITED STATES. (No. 4293)[1]

United States Court of Customs and Patent Appeals, June 24, 1940

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for appellants.

*Sharretts & Hillis* (*Edward P. Sharretts* on the brief) *amici curiae.*

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, special assistant to the Attorney General, and *Ralph Folks*, special attorney, of counsel), for the United States.

*William Whynman, amicus curiae.*

[1] C. A. D. 138.

156

[Oral argument April 10, 1940, by Mr. Blauvelt, Mr. Lawrence, Mr. Whynman, and Mr. Sharretts]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellants brought suit against the United States, in the United States Customs Court at New York City, to recover customs duties claimed to have been illegally exacted on importations of merchandise described on the invoices as "naphthenic oil residue." The substance was designated and referred to throughout the trial by counsel and witnesses for both parties as naphthenic acid.

Thirty-six protests are involved, which were consolidated for trial. All of the merchandise was held to be dutiable by the collector at the rate of 25 per centum ad valorem. That which was involved in entries covered by nine protests was classified by the collector as a chemical compound under paragraph 5 of the Tariff Act of 1930, and that which was covered by all of the other entries and protests was classified as acids not specially provided for, under paragraph 1 of the said act.

The protests were limited to the claim of free entry of the merchandise under paragraph 1733 of the same act, the pertinent portion of which reads as follows:

* * * all distillates obtained from petroleum, * * * not specially provided for.

. At the trial, the record in the case of United States v. Shell Eastern Petroleum Products, Inc., 26 C. C. P. A. (Customs) 132, C. A. D. 6, involving the dutiable status of naphthenic acid was made part of the record herein. In that case—hereinafter referred to as Suit 4124—the judgment of the trial court, holding naphthenic acid (similar in all respects to the merchandise herein) to be entitled to entry free of duty as a distillate of petroleum, was affirmed by this court.

Appellants rested after the introduction of said record. Appellee then recalled one of the witnesses whose testimony appeared in the said record, for further cross-examination. Four witnesses thereafter testified on behalf of the appellee and the witness cross-examined by appellee testified in rebuttal for appellants.

The court thereafter, one judge dissenting, held that the naphthenic acid in issue is not a distillate of petroleum and not entitled to free entry under the provisions of paragraph 1733, supra. It also held that the merchandise is in fact an acid not otherwise specially provided for in the tariff act and affirmed the decision of the collector with respect to the merchandise classified under said paragraph 1. As to the cases wherein the merchandise was classified under paragraph 5, the court overruled the protests without affirming the action

of the collector. From the judgment overruling all of the protests this appeal was taken.

The issue before us is whether or not the imported merchandise is a distillate obtained from petroleum, within the meaning of paragraph 1733, *supra*, and therefore free of duty, or whether it is a substance created by chemical reactions and processes and not by distillation and refinement.

It is contended by appellants that in the instant case there is no testimony which in any way differentiates it from Suit 4124, and that the decision in that case is sound and should govern this case. The appellee contends that the record in this case distinguishes it from Suit 4124 and also from the case of *Borne Scrymser Co.* v. *United States*, 22 C. C. P. A. (Customs) 475, T. D. 47465 which was relied upon in Suit 4124.

We think the contentions of the appellee are sustained by the record here. While this court in Suit 4124 held that naphthenic acid was entitled to free entry as a distillate obtained from petroleum, the judgment was based on a record that did not disclose fully the state of facts that is now before us in this case. Part of the record in Suit 4124 is controverted by testimony in this case, and other parts have been explained with a clarity that presents an entirely different view of the issue.

Distillation is the "operation of driving off gas or vapor from liquids or solids, as by heat, in a retort or still, and condensing all or some of the products in a cool receiver or condenser * * *." Webster's New International Dictionary. A distillate, then, is something obtained by vaporization and subsequent condensation.

The record shows that the distillation of crude petroleum produces certain so-called fractions, each fraction being vaporized, as its boiling point is reached, and then condensed. The kerosene fraction contains naphthenic acid, and as the kerosene and naphthenic acid both have the same boiling point they cannot be separated by vaporization and condensation. In the method by which the imported merchandise was produced, the kerosene fraction is treated with sodium hydroxide, sometimes called caustic soda. The naphthenic acid contained in the fraction combines chemically with the caustic soda to form a new chemical compound known as sodium naphthenate, and water. The solution of sodium naphthenate and water is heavier than the kerosene and is separated from it mechanically. The sodium naphthenate is not contained in the crude petroleum, and in the making of it the naphthenic acid is destroyed by the chemical action. Sodium naphthenate is a definite chemical compound, and is, as shown by the record, manufactured, bought and sold commercially, and has definite commercial uses other than as a substance from which naphthenic acid is made. The sodium naphthenate thus obtained is

then treated with sulphuric acid which causes a chemical reaction by which naphthenic acid, the imported merchandise, is created. This acid, the importers claim, is the original naphthenic acid which came over the still in the kerosene fraction. It is undisputed, however, that when the kerosene fraction is treated with caustic soda the hydrogen atom in the naphthenic acid is withdrawn and never returned; it is also undisputed that when the sodium naphthenate is treated with sulphuric acid the hydrogen atom in the sulphuric acid takes the place of the hydrogen atom that was destroyed, and thus a new naphthenic acid is produced.

The chemical reaction which takes place when the kerosene distillate is treated with sodium hydroxide is expressed by the following equation:

Fraction
containing $C_nH_{2n-1}COOH$ + $NaOH$ = $C_nH_{2n-1}COONa$ + $H_2O$
    (naphthenic   (sodium   (sodium   (water)
     acid)    hydroxide)  naphthenate)

and may be explained by stating that the naphthenate radical of the naphthenic acid, $C_nH_{2n-1}COO$, combines with the sodium, Na, of the sodium hydroxide, NaOH, to form sodium naphthenate, $C_nH_{2n-1}COONa$. The hydrogen, H, in the naphthenic acid, $C_nH_{2n-1}COOH$, combines with the hydroxyl group, OH, of the sodium hydroxide, NaOH, to form water, $H_2O$.

When the sodium naphthenate produced as aforesaid is treated with sulphuric acid, there results a chemical reaction which is expressed by the following equation:

$$2(C_nH_{2n-1}COONa) + H_2SO_4 = Na_2SO_4 + 2(C_nH_{2n-1}COOH)$$
(sodium    (sulphuric  (sodium   (naphthenic
naphthenate)   acid)   sulphate)   acid)

which means that the sodium, Na, of the sodium naphthenate combines with the sulphate radical, $SO_4$, of the sulphuric acid to form sodium sulphate, and the hydrogen, H, from the sulphuric acid combines with the naphthenate radical, $C_nH_{2n-1}COO$, of the sodium naphthenate to form naphthenic acid.

It will be seen that the naphthenic acid produced by this method was not gotten by itself from the crude petroleum. It is not the same naphthenic acid that was present in the crude petroleum. The naphthenic acid of the crude petroleum, when treated with caustic soda, lost the element hydrogen. The sodium naphthenate and water which resulted admittedly does not contain naphthenic acid. It simply is not there. It can not therefore be held that, because in the second chemical reaction set out above hydrogen from the sulphuric acid replaced a similar element that had been taken from the naphthenic acid of the kerosene fraction in the first chemical reaction, the naphthenic acid resulting is the acid of the fraction. It should be

remembered that the series of chemical treatments given the kerosene fraction is not for the purpose of purifying or refining the kerosene, but solely for the purpose of producing naphthenic acid which exists in small quantities in the fraction. The most that can be said of the naphthenic acid so produced is well stated by former Presiding Judge McClelland, in the majority opinion, as follows:

* * * It is therefore not a distillate of petroleum which has been refined or merely separated from other substances contained in the fraction but is a substance created by chemical action in part from elements extracted from the kerosene fraction and in part from an element separate and distinct from those contained in the fraction.

There is no dispute between the parties as to the facts in the chemical treatments resulting in the production of the imported merchandise. It seems to be the conclusion of those who testified for appellants that the naphthenic acid in the original kerosene fraction is the same as that ultimately produced as aforesaid. They reach this conclusion despite the fact that the original acid no longer exists when the hydrogen element has been taken from it. The testimony on behalf of appellants belittles the destruction of the original acid, apparently for the reason that the amount of hydrogen which had been taken away and afterwards replaced is small. However, it is the hydrogen element that gives the substance its acid character.

The record in Suit 4124, while it did disclose chemical reactions, contained nothing to establish that the sodium naphthenate solution did not contain the original naphthenic acid. The following questions and answers are illustrative of the line of testimony on behalf of the appellee in that case:

Q. Now, Mr. Wells, have you produced naphthenic acids which have the same boiling range as those involved here?—A. I have.

Q. How did you produce those naphthenic acids?—A. Starting with crude petroleum we distilled to take off a gasoline fraction; secondly, a wide cut kerosene gas oil fraction, and a crude residuum. The kerosene gas oil fraction is treated with caustic soda, to separate the naphthenic acids from the remainder of the petroleum fraction, using caustic soda in solution. The soda solution is separated by gravity and drawn off.

Q. Drawn off from what?—A. From the top, oil layer.

Q. Is that the remainder of the fraction with which you started?—A. It is. The soda solution is acidified with sulphuric acid, which causes a separation of the original naphthenic acid, and a water solution of sodium sulphate. The water solution of sodium sulphate is drawn off, leaving behind the naphthenic acids, which are then further purified, if required.

Q. And what were those further steps of purification which you employed, if you employed them?—A. Further settling to remove further quantities of water, and a water wash, to remove still further the salts and sulphuric acid present.

Q. When you applied the caustic soda to the original fractions of kerosene there was a chemical change, was there not?—A. There was.

Q. When the sulphuric acid was applied to the——A. Sodium naphthenate.

Q. Did they change back the situation to what it was when you started?—A. It did. It counteracted the effect of the first chemical reaction.

160

Q. So that the chemical reaction which took place was only a temporary one?—A. That is correct.

Q. Are the naphthenic acids which you get after the sulphuric acid treatment the same naphthenic acids which were present in the original petroleum?—A. Yes; they are.

Q. Are they the same naphthenic acids which were present in the fraction which you treated with the caustic soda?—A. Yes.

In the record in Suit 4124 the manager of the refinery in which the acid was produced described, in his deposition, the process as follows:

The naphthenic acids are produced from crude petroleum. The crude petroleum is distilled and three different distillation fractions and a residue are obtained. They are: benzine, kerosene distillate, gas oil, and residue. The kerosene distillate and, in some cases, even the gas oil fractions which contain most of the naphthenic acids originally present in the crude petroleum, is treated with the solution of caustic soda prior to any other chemical refining. *The separate caustic soda solution which contains the naphthenic acids originally present in the crude petroleum* after a separation of the emulsified hydrocarbons, is treated with sulphuric acid and thereby the crude naphthenic acid results. The crude naphthenic acids are then refined with sulphuric acid (approximately 2 per cent) and they are further refined with clay and filtered. The naphthenic acids are then ready for commercial use. [Italics ours.]

He further deposed that no chemical reactions at all took place during the processes he described and stated that the naphthenic acid thus produced was a distinct distillate obtained from petroleum.

The aforesaid statements in the deposition were contradicted in the present case, not only by witnesses for the appellee but also by the witness for appellants on cross-examination. The latter, with reference to the deponent's answer, quoted *supra*, as to the method by which the naphthenic acid was produced, testified on cross-examination in the present case as follows:

X Q. But you don't agree with this answer then?—A. I think I must agree with you that since this answer as printed says that the caustic soda contains a naphthenic acid, we must say that they are in the form of sodium naphthanate; and then I think the answer is correct.

X Q. In other words, if you say, "the sodium naphthanate solution" instead of the "caustic soda solution," is that right?—A. No; I think what we should make that read is as follows: "The separated caustic soda solution which contains the naphthenic acid originally present in the crude petroleum in the form of sodium naphthanate, is treated with sulphuric acid, and thereby the crude naphthenic acid results." I think that is a clearer statement of it.

X Q. Isn't it a fact right at that point, the minute you treat naphthenic acid with caustic soda you have sodium naphthanate, haven't you?—A. You have.

X Q. And that is a chemical reaction; that is what you have right there?—A. That is right.

X Q. The caustic soda solution, it is all past that?—A. I think probably it was used——

X Q. Is it past that? The caustic soda solution was the material you used, wasn't it?—A. That is correct.

X Q. And that reacted on the naphthenic acid and made sodium naphthanate?—A. Sodium naphthanate.

X Q. So you want to change your answer on that, don't you, in saying that is correct?

\* \* \* \* \* \* \*

A. This answer describes the method used in preparing naphthenic acid, except that there are slight ambiguities in phraseology.

\* \* \* \* \* \* \*

X Q. Just look at the last clause once more: "The separate caustic soda solution which contains the naphthenic acids." Isn't that sodium naphthanate you are talking about right there?—A. It is.

X Q. It is all right. You said nothing about sodium naphthanate was the principal thing you are talking about?—A. Chemically, yes.

The same witness, with reference to the answer in the deposition that "No chemical reactions at all" took place, stated under cross-examination in the present case that this answer did not properly describe what took place, "that is, if it means that." He further stated, "There are chemical reactions in this separation," and when asked "You don't agree with the answer given by Buss [the deponent]?" answered, "That is right. I cannot agree with that."

There is no testimony in the record in Suit 4124 that sufficiently and clearly describes the chemical changes that occur in the production of naphthenic acid. If testimony such as appears in the present record had appeared there, we have no doubt but that this court would have reached a different conclusion.

The opinion of this court in Suit 4124, based on the record there present, is sound. The record there and also in the *Borne Scrymser* case, *supra*, led to the inescapable conclusion that the imported merchandise was produced by processes of mere refinement or getting the substance by itself after the distillation of the fraction took place.

It is true that caustic soda and sulphuric acid are refining agents used in the mineral oil industry, but in the production of the naphthenic acid, as shown by the record here, the treatments of the kerosene fraction were not refining or purifying processes.

We adopt with approval the language of the majority opinion in which it is stated:

We think it is amply demonstrated by the record that the use of caustic soda in the production of sodium naphthenate from the kerosene fraction and of sulphuric acid in the production of naphthenic acid therefrom do not constitute the ordinary refining processes applied to petroleum distillates to obtain refined or pure gasoline, kerosene, etc., therefrom. When those chemicals are used in *refining* processes they combine with unwanted impurities and not with the product it is desired to refine. This differentiates the situation in the case at bar from that which obtains when gasoline, kerosene, white mineral oil, etc., are refined. The distinction is that on the one hand a product is *created* by chemical action while on the other a product is *refined* by segregating it from other substances.

We have examined all the cases cited by appellants, but find that they can have no bearing on the state of facts here presented for the reason that in those cases the substance sought to be produced did

not at any time lose its essential character. The same reasoning applies to appellants' reference to the so-called cracking process.

The judgment appealed from is *affirmed*.